NEW-YORK,
May, 1806.

Hotchkiss
v.
Lothrop.

## Hotchkiss *against* Lothrop.

In action for a *libel*, the defendant may give in evidence a former publication by the plaintiff to which the *libel* was an answer, to explain the subject matter, occasion, and intent of the defendant's publication, and in mitigation of damages. But such prior publication by the plaintiff, though a libel on the defendant, does not amount to a *justification* of the defendant, nor will it be received in evidence as a justification.

THIS was an action for a *libel*. The cause was tried at the *Oneida* circuit, on the 14th June, 1805, before Mr. Chief Justice *Kent*. The publication of the *libel* by the defendant, as editor of the Gazette in which it appeared, was proved. The paper was addressed to the electors of the county of *Oneida*, in defence of the character of *Jesse Curtis*, Esquire, one of the candidates, as a member of the assembly, against certain charges which had appeared in the *Columbian Gazette*, printed at *Utica*, and in this defence the author animadverts on the plaintiff, as the supposed author of the other piece. The plaintiff, in aggravation of damages, offered to prove that the defendant was indemnified for the publication of the libel; but the judge overruled the evidence, as the defendant was to be considered as the author. The defendant then offered in justification, under the notice of special matter annexed to the plea of not guilty, to prove that the plaintiff had, in a certain publication made by him, previously libelled *Jesse Curtis;* but this was objected to, and overruled by the judge, as matter of justification. The evidence was then offered as matter of excuse, and it was admitted by the judge, to explain the subject, occasion, and intent of the publication complained of by the plaintiff, it being unnecessary, in that view, that it should be set forth in the notice which accompanied the plea. The paper signed by the plaintiff was accordingly read to the jury. The judge charged the jury, that as the plaintiff had produced no evidence to prove the truth of the facts he had alleged against *Curtis*, the publication was to be deemed untrue, and that

the defendant was, therefore, warranted in making the publication complained of by the plaintiff, provided he confined himself, in his strictures, to the previous publication of the plaintiff, which appeared to him to be the case.

NEW-YORK,
May, 1806.

Hotchkiss
v.
Lothrop.

The jury found a verdict for the defendant.

*Simonds*, for the plaintiff, contended, 1. that the evidence offered to show that the defendant was indemnified by the author, ought to have been received, as it was a circumstance proper for the jury to take into consideration in estimating the damages. 2. The *provocation* to a libel, furnished no matter of excuse, and could not be given in evidence for that purpose. If A libels B, it is no legal excuse or justification for A, that B had previously libelled him. The publication thus produced by way of excuse, was not specified in the notice, and, ought not, therefore, to have been received in evidence.

*Gould*, contra, 1. The evidence of the defendant's having been indemnified by the author, was clearly inadmissible. The plaintiff's right of action against the defendant, was as perfect, as if he were the real author, against whom the plaintiff might, also, have his action, and ought not, therefore, to have the damages against the publisher enhanced, on the ground of an indemnity by the author. 2. It was perfectly proper and competent for the defendant to explain the cause and circumstances of the publication, to prove that there was no malice. It is like showing the subject matter, or whole conversation, to prove that there was no slander or malicious intent. *Minors v. Leefend.* Cro. James. 114. Suppose the defendant had recited the previous publication of the plaintiff *verbatim*, and then had proceeded to comment upon it, in the manner he has done, would not the *text* have justified the comment? The reference made to it is equally certain, and cannot be mistaken. The two publications, therefore, ought to be considered together.

In the case of *Williams*, alias, *Anthony Pasquin*, against

NEW-YORK, *Faulder*, for a libel, tried before Lord *Kenyon*, in 1797,
May, 1806. his lordship permitted Mr. *Garrow*, the defendant's coun-
Hotchkiss sel, to read to the jury, various passages from the different
v. publications of the plaintiff, vilifying and libelling some of
Lothrop. the most respectable characters, in order to show that the
plaintiff was a notorious and infamous libeller, and therefore,
not entitled to ask for damages for a publication against him-
self. Lord *Kenyon* observed to the jury, "that it was their
" duty to consider, whether the author of such works as
" they had heard read and described, had a right to call
. " for damages. It appears to me," says he, " that the
" author of the Baviad (the work published by *Faulder*,)
" has acted a very meritorious part in exposing this man."
The jury, without a moment's hesitation, found for the
defendant. If the rule thus adopted by Lord *Kenyon*, be
correct, and it is certainly founded in principles of jus-
tice and self defence, the judge at the trial of the present
cause, was right in admitting evidence to explain the rea-
son and motives, which induced the defendant to publish
the observations on the plaintiff, for which this action has
been brought.

SPENCER, J. delivered the opinion of the court. The
plaintiff offered proof, in aggravation of the damages, that
the defendant had been indemnified for the publication he
had made. This proof was overruled; and its relevancy does
not strike me. The circumstances of the defendant are not
shewn to have been bad or insolvent. Without expressing
any opinion on a different state of facts, I think this evidence
was properly rejected.

The defendant, under his notice, offered proof of the first
publication, to which that of the defendant was an answer.
The judge overruled it, as matter of justification, on some
mistake in the notice; but admitted it in mitigation of the
damages, and as explanatory of the subject matter, occa-
sion and intent of the defendant's publication. The proof,
under these circumstances, and for that purpose, I conceive
proper, for otherwise, the defendant's libel might not be in-
telligible. In charging the jury, the judge instructed them,

that the plaintiff, not having proved the truth of his charge against *Curtis*, the same must be deemed untrue ; and that the defendant was well warranted in making the publication complained of, if it appeared to them, as it did to him, that he had confined himself in his strictures to the previous publication of the plaintiff, or had made no allegations extrinsic or foreign thereto.

It does not appear to me, that the plaintiff was bound to prove the facts of the first publication, or that he would be permitted to do so. *Curtis* was a stranger to these proceedings; and if his character or conduct could thus be drawn in question, the reputation of no man would be safe ; for a fictitious suit might thus be instituted, for the purpose of destroying the fairest reputation in the community.

If in a wager, where the feelings or reputation of a third person may be involved, the court will not permit his character to be assailed, I cannot perceive any reason for allowing it under these circumstances—*Curtis* is not legally to be presumed to be prepared on a trial *inter alios* to defend himself.

It has not been controverted, that the defendant's publication, if untrue, was libellous ; and I can never subscribe to the doctrine, that because *A* has written a piece against *B*, about the truth or falshood of which the court know nothing, that *C* can interfere, by lavishing his abuse on *A* for that writing. It was, as I have observed, matter properly admitted in evidence, that the plaintiff had written a piece, to which the defendant's was an answer ; and it might and ought to operate in mitigation of damages, that the plaintiff had assailed an individual in the public prints, who was holden up as a candidate for an elective office. But it having been admitted to be read in evidence, on a principle which I do not adopt, I think a new trial ought to be awarded, with costs, to abide the event.

New trial granted.